IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | 8:06CR353 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| DAVID SANTANA-AGUIRRE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the defendant's objection, Filing No. 56, to the report and recommendation (R&R), of the magistrate, Filing No. 55. Defendant filed a motion to suppress, Filing No. 36, and the magistrate judge recommended the defendant's motion be denied. Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a *de novo* determination of those portions of the R&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has carefully reviewed the entire record including the transcript of the suppression hearing, Filing No. 54, the briefs, and the relevant caselaw. The court accepts the facts set out in the R&R and they need not be repeated here, except to the extent necessary to this court's findings. The court finds the objections to the report and recommendation are overruled.

**Background**

On October 17, 2006, the Nebraska State Patrol (NSP) Commercial Interdiction Unit (CIU) assigned Investigators Richard Lutter and Alan Eberle to the Omaha Greyhound bus terminal. At the scene, Investigator Eberle's attention was drawn to a male individual clutching a suitcase who appeared nervous. Investigator Eberle watched this individual meet with another on the west side of the bus terminal. The defendant set the suitcase

close to his feet, and conversed with the other male. According to Investigator Eberle, the male with the suitcase kept looking over his shoulder, appearing very nervous. Investigator Eberle identified the individual with the suitcase as the defendant Santana-Aguirre and the other as codefendant Julian Arana-Santibanez.

Following the conversation, Arana-Santibanez walked towards the front of the terminal with Santana-Aguirre where the officers spotted the individuals walking single file. Investigator Eberle made a gesture to Investigator Lutter indicating his interest in approaching the two individuals. Investigator Lutter approached Santana-Aguirre and Investigator Eberle approached Arana-Santibanez. In English, Investigator Lutter notified Santana-Aguirre they were police officers and showed his identification as did Investigator Eberle. Separately, both Arana-Santibanez and Santana-Aguirre were notified they were not in any trouble or under arrest, but the officers wanted to talk with them. Santana-Aguirre appeared not to understand English, and thus, Investigator Lutter repeated his comments in Spanish. Investigator Eberle attempted to do the same, but Arana-Santibanez told Investigator Eberle he spoke English.

Investigator Lutter learned command Spanish through a law enforcement training course, tapes, and field experience. After Investigator Lutter repeated in Spanish that he just wanted to talk with them and they were not under arrest, Santana-Aguirre responded "yes" to the Spanish word "comprendo." According to Investigator Lutter, Santana-Aguirre never gave any indication Santana-Aguirre did not understand Investigator Lutter's limited Spanish. In Spanish, Investigator Lutter asked for Santana-Aguirre's identification. In response, Santana-Aguirre gave Investigator Lutter the identification. Apparently, Investigator Lutter was suspicious of the identification because it was of Mexican origin.

2

Investigator Lutter questioned its validity because, through experience, he had seen many fake identification cards like this one. Investigator Lutter gave the identification back to Santana-Aguirre. When Investigator Lutter asked for the bus ticket, he noticed it was a one-way ticket from Colorado Springs to Omaha purchased with cash on the date of departure. Investigator Lutter asked if Santana-Aguirre had any illegal substances on him. Santana-Aguirre replied in the negative.

Investigator Lutter then asked if he could search Santana-Aguirre's person and bag. According to Investigator Lutter, Santana-Aguirre reacted in an affirmative manner by turning to Investigator Lutter and opening his hands. Investigator Lutter patted Santana-Aguirre down and asked if he could search Santana-Aguirre's bag. According to Investigator Lutter, Santana-Aguirre responded by opening his hand to Investigator Lutter, pointing to the bag as if opening the bag for the investigator. Inside the bag, Investigator Lutter found two large wax candles which he believed were suspicious because they were large, plain, and inexpensive looking. Upon further examination, Investigator Lutter noticed bumps on the candle, holes by the wick, inconsistent layering and a lack of original packaging with after-marketing tape securing the packaging. Investigator Lutter noticed Arana-Santibanez was very interested in Investigator Lutter's contact and search of Santana-Aguirre even though Investigator Eberle was talking to Arana-Santibanez. Thus, Investigator Lutter, in English, asked where the candles had come from and Arana-Santibanez told him they brought them as gifts. Santana-Aguirre now appeared very nervous and began looking to Arana-Santibanez for guidance. Investigator Lutter told Arana-Santibanez the officers would like to take the candles to the back room of the bus

3

terminal. According to Investigator, Lutter he led the way followed by Santana-Aguirre, Arana-Santibanez and Investigator Eberle.

Once in the room Investigator Lutter cut into one of the candles with a knife and found a duct-taped bundle in the candle. The field test yielded a positive result for methamphetamine. Arana-Santibanez and Santana-Aguirre were informed in English they were under arrest and were transported to the NSP traffic office in west Omaha and placed in separate rooms.

Investigator Lutter interviewed Santana-Aguirre with NSP officer Trooper Coover who speaks fluent Spanish. Trooper Coover read Santana-Aguirre a Spanish version of his *Miranda* rights which Santana-Aguirre signed and acknowledged. The parties acknowledged the Spanish translation is a true depiction of the English version. While being interviewed, Santana-Aguirre made incriminating statements.[1]

**Discussion**

The defendant does not object to whether he gave initial consent for the search. Instead, the defendant argues the search went beyond the scope of any purported consent Filing No. 57. The court finds this argument lacks merit.

The subsequent detention of an individual after consent to search must be supported by reasonable suspicion. *United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir. 1998). The Eighth Circuit has summarized the standards used to consider whether reasonable suspicion exists, ". . . we may consider any added meaning certain conduct

---

[1] Officer Lutter testified Santana-Aguirre stated he was aware of the candles. Officer Lutter could not recall the "other statements" during his testimony without the reports.
.

4

might suggest to experienced officers trained in the arts of observation and crime detection and acquainted with operating modes of criminals." *Id.*; see *United States v. Wallraff*, 705 F.2d 980, 988 (8th Cir. 1983). The officers utilized their experience and training to discover the candle was being used as a container. This allowed the officers to further inspect the candle. *See, e.g., United States v. Alverez*, 235 F.3d 1086 (8th Cir. 2000) (citing *United States v. Casares-Cardenas*, 14 F.3d 1283 (8th Cir.1994)) (officers had probable cause to believe contraband was hidden in spare tire allowing the destruction of such when a thudding noise was made upon inspection indicating it was used for a container.) In Mr. Santana-Aguirre's case, he consented to the search of his bag. The officers discovered two candles with significant defects. The defects presented the officers with a reasonable suspicion to believe the candle was being used to hide drugs, thus warranting the inspection of the candle.

In addition, the Eighth Circuit affirmed officers opening sealed Mountain Dew bottles containing PCP found in the defendant's luggage. *United States v. McKines*, 933 F.2d 1412, 1423 (8th Cir. 1991) (en banc). The Eighth Circuit stated, "when McKines readily consented to the search of his luggage, as the district court found, he authorized a search for drugs which could be located within any containers in his suitcase." *Id.* at 1424; *see also,* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 8.1(c) at 24 (4th ed. 2004) ("Somewhat more difficult is the question of whether such a general consent permits the opening of closed but unlocked containers found in the place as to which consent was given. Ordinarily, it would appear that the answer is yes, particularly if the police have indicated they are searching for a small object which might be concealed in such a container."). *McKines* is applicable to the present case.

5

Investigator Lutter asked Santana-Aguirre if he had any illegal substances on him. Upon Investigator Lutter's request, Santana-Aguirre gave consent to search the bag where the candles were found. The officers noted of the numerous defects and determined the candles were used to hide drugs. Thus, the officers search of the interior of the candles was within the scope of consent.

THEREFORE, IT IS ORDERED that:

1. The motion to suppress, Filing No. 36, is denied;

2. Defendant's objections, Filing No. 56, are overruled;

3. The magistrate's report and recommendation, Filing No. 55, is adopted in its entirety.

DATED this 29th day of June, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge